Good morning ladies and gentlemen. Our first case for this morning will be Allensworth v. Colvin. Mr. Schiff. May it please the court, Jim Schiff on behalf of the plaintiff Ryan Allensworth. This is a social security disability case in which the administrative law judge made several errors. We are asking this court to reverse on two main issues. First, the ALJ's residual functional capacity finding was not supported by substantial evidence because she did not explain how she determined that Mr. Allensworth was capable of performing simple routine and repetitive work. And second... Is your main point there that she doesn't connect the sleep problems, the fact that he might fall asleep in the middle of the day to the simple work that she thinks he can do? Yes, Your Honor. And second, the ALJ erred in assessing Mr. Allensworth's credibility in light of evidence showing that his allegations of sleep apnea-related daytime somnolence were supported by the objective evidence and his limited daily activities. Mr. Allensworth suffers from several impairments including degenerative disc disease of the cervical and lumbar spines, obesity, headaches, and severe obstructive sleep apnea. Prior to applying for disability, Mr. Allensworth was employed as a sheet metal worker in the construction industry, earning upwards of $70,000 a year. As Your Honor indicated, the bulk of the evidence in this case relates to Mr. Allensworth's obstructive sleep apnea. But there are really kind of three different sleep problems that are mentioned in this record. There's the sleep apnea, there's the hypersomnia, and there's the narcolepsy. Are we supposed to distinguish among those? Yes, Your Honor. Mr. Allensworth had the positive blood test for narcolepsy, but the sleep study technician stated that it would be a very rare occurrence for somebody to have narcolepsy and obstructive sleep apnea, although it was possible for someone to have both. So what about the evidence that the CPAP machine improved his sleep, apparently quite considerably, if he was only waking up once during the night with the machine? There were some aspects of his sleep apnea that were improved by using the machine at night. He was waking up less often. He was able to connect evidence showing that he continued to fall asleep during the day with evidence showing that he could work. The ALJ, in our view, made an independent medical determination in concluding that the symptoms of sleep apnea, headaches, and pain would result in the same limitation to simple routine and repetitive work. And our view is that reversal is required because the ALJ did not substantiate her finding with evidence either subjective or objective that show that Mr. Allensworth could stay awake sufficiently to complete the kind of work that she found that he could do. Now could, my recollection, please correct me if I'm wrong, is that the vocational expert, there was a vocational expert here, right? Yes. And that person said that if somebody were to fall asleep during the day, there would be no jobs. Right. Yeah, so just focus. I think that's really the issue here. The cervical MRI, all these other problems that he has don't seem to really change things much. Yes, we agree, Your Honor. And the issues with the ALJ's decision is that in her analysis of the treating physician's opinion, she focused only on the back impairments and did not discuss Dr. Imlock's opinions regarding ability to stay awake during the day and complete a normal work week without interruptions from his symptoms. The evidence in this case shows that Mr. Allensworth fell asleep doing almost any kind of activity, whether he was helping his son with homework, whether he was driving, watching television, using the bathroom, anything that he was doing, he was falling asleep. So even if he was more refreshed in the mornings, he was still falling asleep during the day. Does the record show when he moved out from his home with his, I suppose now ex-wife, and moved in with his parents? The record does not speak to that. But the fact that Mr. Allensworth was living with his parents suggests that he had additional help with taking care of the daily activities. And the record shows that he was not taking his dog on a walk. He was just letting the dog outside. And the only driving that he was doing was driving his autistic son a block and a half to school every morning so the son would not get lost. This court recently held in Varga v. Colvin that a limitation to work involving simple work-related decisions that was free of fast-paced production requirements did not adequately encapsulate an individual's limitations in concentration, persistence, or pace that were related to the claimant's anxiety, depression, physical problems, and pain. The ALJ's residual functional capacity finding in this case is less restrictive than the finding in Varga because the ALJ found that Mr. Allensworth could perform three production rate types of jobs even if they were simple, routine, and repetitive. He would still need to maintain alertness to complete the tasks. The ALJ summarized Dr. Imlock's opinions on the issues that we are arguing warrant reversal, but she didn't explain why she rejected them. And this is a problem for three reasons. First, an ALJ must always provide reasons for rejecting the opinion of a claimant's treating physician. And also, Dr. Imlock provided the only opinion on Mr. Allensworth's ability to concentrate, persist in the workplace. Well, she spends a lot of time on the other disorders. Looks like the sleep disorder, the big thing I think that causes her to dismiss this is the CPAP result. That's true, Your Honor. The ALJ didn't discuss the evidence that suggested that the CPAP machine did not relieve the symptoms that he was having during the day. So while we admit that there were improvements in some aspects, it didn't resolve the problem. It's also notable that Mr. Allensworth was prescribed the medication Adderall to assist him with alertness, and he took double the prescribed dose just to stay awake, but it was insufficient to keep him alert. So when he's doing activities like reading news articles on the computer and he's still falling asleep, we don't believe the evidence shows that he would be able to maintain a production rate type of job for eight hours a day for five days a week. The ALJ also made a number of unreasonable inferences regarding Mr. Allensworth's sleep. The ALJ correctly noted that he experienced some improvements, but the ALJ did not address the evidence of the limited daily activities, which demonstrated that he could not maintain alertness for any kind of extended period. The ALJ's decision is a little bit puzzling in the credibility finding because she says that she credits the symptoms associated with daytime somnolence. She credits the symptoms associated with sleep apnea, but not the severity of the sleep apnea, and if she's crediting... He didn't go into a deep, deep sleep. I'm sorry? He didn't go into a deep, deep sleep. Right. Well that seems to be what the ALJ is suggesting, is that he would fall asleep, that he would be less alert than the average person, but he would still be alert enough to complete work tasks. Kind of He should become a judge, but go ahead. If your honors don't have any additional questions, then I'll reserve the rest of my time for rebuttal. That would be fine. Thank you. Thank you. Ms. Schwartz. Good morning, your honors. May it please the court, my name is Allison Schwartz and I represent the Commissioner of Social Security. Based on the arguments and the responses from the court, I'm going to focus mostly on the sleep apnea here. With regard to the ALJ's explanation of the RFC, the ALJ acknowledged Mr. Allensworth's testimony that he would fall asleep at a workstation and that he had daytime somnolence. That was his testimony. The ALJ compared those statements to the treatment records, including Mr. Allensworth's treatment with his treating physician, Dr. Imlach. But the thing is, the most that is in this record is that his, and I'm looking at the ALJ's opinion, not anything else, is that his mornings were more lucid than they had been. That doesn't tell me, number one, anything about the afternoon, and in order to be found able to work, you've got to work for eight hours, not four. And secondly, more lucid than they had been doesn't tell me any absolute information about what does this mean. You know, he used to fall asleep five times and now he only falls asleep two times, he still can't work. So I don't think the ALJ in any way coped with the fact that he falls asleep, and even the least skilled job cannot be done if you're asleep. Sure, but what is missing from the treatment records are statements that Mr. Allensworth is asleep all day, that he can't stay awake. He doesn't have to be asleep all day, he just has to drop off from time to time. And the vocational expert, at least, thought that you can't hold down a job if you're all of a sudden for 15 minutes at a shot asleep. Right. Well, the difference here is that Mr. Allensworth reported that, as you mentioned before, instead of waking up every 45 minutes, he was only waking up once. In the middle of the night, and then, again, I'm looking at the ALJ's opinion, he reported waking up once during the night instead of every 45 minutes, and he was waking up more refreshed, he reported that although he still had daytime somnolence at the computer, meaning he's falling asleep at the computer and while driving, hopefully not falling asleep there, his mornings were more lucid than they had been. That's the most that he ever says. There is never a hint from Dr. Yalamanchili, from Dr. Imlach, from any doctor, that he can stay awake through the day. Well, my response to that would be that it's Mr. Allensworth's burden to prove that he is unable to perform the demands of light work with the RFC limitations in the ALJ's RFC findings. Wait, I don't understand you. Do you think he can stay awake for 40 hours during the week? 40 hours without a break? Yes. I don't think anyone could do that. No, no, no. If he works eight hours a day, can he remain awake for all 40 hours in his work week? Well, it's not up to me to opine as to whether or not he could do that. But, yes, it is. Wait a second. What are you talking about? The ALJ. I'm asking you a straightforward question. Is he capable of staying awake for the full work week? Yes or no? The ALJ found that he was. Yes or no? You tell me. I can't answer the question based on my own opinion because I do not see Mr. Allensworth testify. What is the finding? Did the ALJ find that he can, in fact, remain awake 40 hours a week, that is, during the work week? The ALJ's finding was similar to that in that he found that Mr. Allensworth would not. What do you mean similar to that? I guess the answer would be no. Similar to what? Because. Please wait until the judge is finished. Sorry, Your Honor. Please continue. What do you mean by similar? The ALJ's finding was that, based on his review of the medical evidence, as well as his observation of Mr. Allensworth testifying, was that he did not believe that Mr. Allensworth would fall asleep at his workstation. But there's no evidence at all. This woman, Roxanne Kelsey, the ALJ, seems to think that if you have a simpler job to do, you're not going to fall asleep, which, for which there is no medical evidence, for which there is no common sense, for which there's nothing. This ALJ never finds that Mr. Allensworth doesn't have sleep apnea. Sleep apnea causes people to fall asleep during the day because of the poor quality of their sleep at night. He also has the hypersomnia that's throughout the records. You can't tell me that there's no way, when all of the evidence is on one side, that the ALJ can just say, I'm finding the opposite finding. There's no substantial evidence to support it. I understand what you're saying, Your Honor, but the ALJ cited medical records that showed that the CPAP improved his symptoms, and it was her conclusion. In the morning. In the morning. Where's the evidence that the ALJ cited that he can stay awake for a full eight-hour day? The ALJ relied on evidence showing that his statement to Mr. Yalom and Chilly that the CPAP helped his symptoms, even though he still had some sleepiness. The ALJ acknowledged that he had sleepiness. She just did not find that it rose to a disabling level. I don't even know what that means. Let me ask you about the jobs that the vocational experts found. Now, what's a sorter? Your Honor, I'm going to answer your question. I just want to make it clear that this was an issue that was not raised in either party's brief. A sorter is somebody who works in the beverage industry as a bottling line attendant in the beverage industry. Pardon? What does he do? I said a bottling line attendant in the beverage industry. This is an assembly line. It appears to be, yes, Your Honor. Does he handle the bottles? Does the sorter handle the bottles at all?  Based on the DOT definition of the job. If he falls asleep, what do you think could happen to the bottles? Right. Well, thank God they're not whiskey. The ALJ found that he would not fall asleep. What's an assembler? An assembler is, the assembler as it's defined in this DOT definition is a similar job, an assembly line worker in several professions. A repetitive bench or line assembly operator who produces products on a mass basis. What's a hand packager? A hand packager is someone who packs and inspects package cartons before they're shipped off. These are extremely monotonous jobs. Someone who has trouble keeping awake, not going to keep awake in doing jobs like this. Can you imagine standing on an assembly line, sorting little things? Where, by the way, did the vocational expert get these numbers from? Nobody objected to the vocational expert's testimony. It was unchallenged at the hearing, so he did not disclose. Don't you expect your Mr. Law Judge to be curious where these people get these numbers? Pardon me? I'm sorry. How on earth does he know that there are 2,777 jobs as an assembler in Chicago and six adjacent counties? I don't know, Your Honor, but I do. Well, you ought to know. Well, it's well settled law in this jurisdiction that if a vocational expert's testimony is unchallenged and uncontradicted at the hearing that the ALJ is entitled to rely on it. Of course, you know they don't know what they're talking about. I cannot say that, Your Honor. There is no statistical basis for any of these figures. I cannot say that, Your Honor. I do know that the vocational expert has... You should look it up sometime and figure out what your agency is doing. Excuse me, Your Honor? I'm sorry. I missed that question. You should find out sometime how your agency generates these figures. They're critical to the decision. They're never analyzed. We've written a number of opinions about this problem. I know, Your Honor. I will say that the opinions that have been issued have been before the date of this hearing. Also, the regulations require that he determine the number of jobs in the national economy, the regional economy, and the local economy. So here, regional economy was defined as Chicago plus six counties, and there's no mention of the national economy or the local economy. Well, I believe by the Chicago and the six collar counties, the vocational expert meant to include the regional economy and the local. Where's your chance to escape? Well, that's the point. We're running out of time. That's the point. That's the regional economy.  I hear you, Your Honor. Findings in these decisions. But the claimant was represented by an attorney at the hearing who made no objection to this testimony. Well, where was the administrative law judge? Did she fall asleep also in the middle of writing her opinions and leave out required portions of them? Well, I can't tell you what was in her head, but I do know that the vocational expert has 20 years' experience placing people. I'm just saying he's supposed to give three figures, not one figure. He gave, right? Supposed to give national, regional, and local, and he just gave regional figures. It's correct that they just gave a regional or local, depending on how you would define it. All right. Thank you very much. Thank you. Anything further, Mr. Schiff? If there's more, are you going to talk us out of something? If I may respond just briefly to a couple of the commissioner's arguments, the commissioner mentions that the ALJ relied in part on her observations of Mr. Allensworth at the hearing and concluding that he would maintain the alertness for the type of work that he could do. But actually, the ALJ did not remark on that in her decision. She did not rely on it. Were you an attorney before the board, before the ALJ? I was not. Well, aren't you lucky? And also, the commissioner's attorney mentions that Mr. Allensworth has the burden of showing that he cannot perform the light-duty jobs the ALJ found that he could do. Mr. Allensworth has met his burden with the evidence in the file and by supplying a treating physician opinion that supports his allocations. Thank you very much. Thank you very much. Thanks to both counsels. We'll take the case under advisory.